IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| NATIONAL SHOPMEN PENSION FUND, et al. | ) ) ) | |
| Plaintiff, | ) | Case No. 09 C 6983 |
| v. | ) ) | Honorable Virginia M. Kendall |
| DISA INDUSTRIES, INC. | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff National Shopmen Pension Fund ("the Fund"), by its Trustees, John Kerr, Anthony Walencik, James R. King, and Ronald T. Bruce filed suit against Defendant DISA Industries, Inc. ("DISA") alleging that DISA has failed to pay its pension fund withdrawal liability in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001 *et seq*. DISA moves to dismiss the Fund's Complaint as barred by the doctrine of *res judicata* and for failure to state a viable claim. For the reasons stated below, DISA's Motion to Dismiss is granted.

**BACKGROUND**

The following facts are taken from the Fund's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). National Shopmen Pension Fund is a joint labor-management pension fund established pursuant to Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c). The Fund provides pension, retirement and related benefits to eligible employees of employers who contribute to the

Fund. The Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3). DISA is an employer affecting commerce under ERISA, *see* 29 U.S.C. § 1002(5), and the Labor Management Relations Act of 1947, 29 U.S.C. § 151 *et seq.* During 2000 and 2001, DISA contributed to the Fund's plan as an employer.

On or about December of 2001, DISA withdrew from the Fund pursuant to 29 U.S.C. § 1383 and was thus subject to withdrawal liability assessed by the Fund. Withdrawal liability is determined by assessing the portion of the Fund's unfunded vested benefits allocable to DISA under a statutory formula. *See* 29 U.S.C. §§ 1391(c)(4) & 1399(c). By a letter dated June 21, 2006, the Fund notified DISA of withdrawal liability totaling $372,472.00. The schedule provided in the letter stated that DISA was to pay $652.00 per month for 240 months, for a total payment of $127,761.00. From the date on which its first contribution was due—July 16, 2006—to the present, DISA has paid and continues to pay this amount to the Fund each month.

On September 19, 2006, DISA sent a notice of its intent to pursue arbitration regarding the withdrawal liability. In letters dated January 24, 2007 and February 15, 2007, the Fund notified DISA that it had erred in calculating the monthly payments and asked DISA to pay $978.00 per month and to pay $1,956.00 in prior underpaid amounts.[1] Subsequent to these requests, DISA requested arbitration concerning the withdrawal liability assessment. During the pendency of the arbitration, DISA continued to pay $652.00 per month.

On January 23, 2008, the Fund filed suit in the United States District Court for the District of Columbia, claiming that DISA was required to pay the $978.00 requested during the pendency

---

[1] As will be further explained below, this change arose from the Fund's decision to calculate DISA's withdrawal liability on the basis of a two-year plan participation period, rather than a three-year participation period as mandated by the statute.

2

of the arbitration. In a Memorandum Opinion on October 17, 2008, the district court dismissed the Fund's complaint because the statute only required DISA to pay the original amount requested by the Fund while the arbitration was pending. *See Shopmen Pension Fund v. DISA Indus., Inc.*, 583 F. Supp. 2d 95 (D.D.C. 2008) ("*Shopmen I*").

On March 23, 2009, DISA withdrew its arbitration demand. The Fund then sent a letter dated April 8, 2009, telling DISA to pay $978.00 per month for future payments and to immediately pay the $326.00 difference for all the prior payments. The letter further stated that DISA's failure to pay these amounts within sixty days would constitute a default and that the full withdrawal liability would then become due and owing. DISA continued to pay the $652.00 monthly amount, and the Fund filed this suit.

## **STANDARD OF REVIEW**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.* However, where a complaint is self-defeating in its allegations, a

3

motion to dismiss for failure to state a claim is proper. *See Wilkow v. Forbes, Inc.*, 241 F.3d 552, 555 (7th Cir. 2001).

## DISCUSSION

**I.     DISA's *Res Judicata* Claim**

DISA moves to dismiss the Fund's claim for withdrawal liability on the grounds that it is barred by *res judicata*. Under the doctrine of *res judicata*, a party is precluded from relitigating an issue that was or could have been raised in a prior action once a final judgment is entered regarding that action. *Highway J Citizens Group v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006). The three prerequisites for an application of *res judicata* are: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits. *Cent. States, Se. & Sw. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002). Simply put, when a final judgment is entered on the merits of a case, it is final as to that cause of action for every matter offered to sustain that claim and also any other matters which could have been offered. *Nevada v. United States*, 463 U.S. 110, 129-30 (1983).

In the present case, there is no dispute that the first element and third elements are satisfied. Rather, the parties dispute whether there is an identity in the cause of action. A cause of action has identity with a previously litigated matter if it emerges from the same nucleus of operative facts as that earlier action. *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995). However, "a litigant's claims are not precluded if the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action." *D & K Props. Crystal Lake v. Mut. Life Ins. Co. of N.Y.*, 112 F.3d 257, 260 (7th Cir. 1997).

The operative facts presented in the complaint by the Fund in the present case differ, albeit not obviously, from those in District Court for the District of Columbia case. Specifically, the facts as presented in the complaint filed in *Shopman I* still had the pending arbitration between DISA and the Fund to address. The District of Columbia court specifically held that "[t]he plaintiffs have not stated a cognizable claim because they are only entitled to interim payments in the amount specified in the initial demand letter . . . *pending arbitration* of the parties' underlying dispute over withdrawal liability." *Shopmen I*, 583 F. Supp. 2d at 100 (emphasis added). Thus, while the complaints are similar in many respects, the change in a key operative fact—the then-pending arbitration—distinguishes the present cause of action from the one litigated in *Shopmen I*.

Furthermore, while DISA contends that the District Court for the District of Columbia fully resolved the underlying issue of the calculation of DISA's liability, the Fund is correct that the court there expressly reserved the payment dispute for resolution by an arbitrator. Specifically, the opinion in *Shopmen I* stated that "[t]he Court acknowledges that determining the appropriate calculation of the underlying withdrawal liability and payment schedule *are properly addressed first via arbitration* because they are quintessentially within the expertise of an arbitrator skilled in pension matters." *Shopmen I*, 583 F. Supp. 2d at 101 (internal quotations omitted) (emphasis added). Accordingly, the Fund's claim to a different payment amount was an issue expressly reserved by the court and is not precluded by *res judicata*. *D & K Props.*, 112 F.3d at 260. Therefore, DISA has failed to established that *res judicata* is applicable to the present claim.

## II. The Fund's Assessment of Withdrawal Liability Pursuant 29 U.S.C. § 1399(c)

While the Fund's claim may not be barred by *res judicata*, the Fund has failed to plead facts that state a claim upon which relief can be granted. To make out a prima facie case for withdrawal

5

liability, the Fund must establish that: (1) the Fund was a multiemployer plan within the definition of ERISA; (2) DISA received notice of its withdrawal liability; and (3) DISA failed to pay or contest its liability through arbitration as required by the MPPAA. *See, e.g., Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Acme Motor Freight Serv., Inc.*, No. 06-C-5981, 2007 WL 2815835, at *3 (N.D. Ill. Sept. 20, 2007) (Darrah, J.). To then accelerate withdrawal payments under § 1399, the Fund must show that DISA defaulted within the meaning of 29 U.S.C. § 1399(c)(5). To do so, the Fund must show that (1) DISA failed to make payments when due, (2) the Fund gave written notification to DISA of its failure, and (3) DISA failed to cure any defect within 60 days after the notice. *See Cent. States, Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 553 F. Supp. 2d 957, 960-61 (N.D. Ill. 2008).

Here, neither party contests that DISA owed the Fund, a multiemployer pension plan, withdrawal liability payments and that DISA received notice of its obligations. At issue in the present case is whether the Fund has properly claimed that it is entitled to acceleration of those payments pursuant to 29 U.S.C. § 1399(c)(5) because DISA failed to make adequate payments when due. DISA has paid, and continues to pay, $652.00 per month—as the Fund admits. The Fund argues that DISA has defaulted by not paying the revised payment amount of $978.00 per month, and that the entire balance is therefore now due.

The Fund contends that DISA's withdrawal from arbitration waives any defenses DISA may have to the reassessment of withdrawal liability. However, the Fund did not object to DISA's withdrawal from arbitration before the arbitrator reached a decision as to whether DISA would be obligated to pay the increased monthly demands. Indeed, the District Court for the District of Columbia specifically left that issue for the arbitrator to decide. *See Shopmen I* at 101 ("An

arbitrator will determine whether or not [DISA] owes any withdrawal liability, the appropriate amount of such liability, and . . . whether an adjustment is warranted with respect to the current $652 per month interim payments being made by [DISA].") To now argue that DISA is foreclosed from opposing the Fund's reassessment would also seem to imply that the Fund should be foreclosed from re-seeking the increased monthly payments after failing to pursue them in arbitration. *See* 29 U.S.C. § 1401(a)(1) ("*Any* dispute between an employer and the plan sponsor of a multiemployer plan concerning a [withdrawal liability determination] shall be resolved through arbitration.") (emphasis added). Thus, the Fund's position asks the Court to apply the exhaustion of administrative remedies rule to DISA, but not to the Fund itself, which the Court declines to do.

Central to the Fund's claim that it is entitled to the increased payments, notwithstanding its failure to pursue arbitration regarding the withdrawal liability determination, is its alleged error in the calculation of DISA's liability addressed in the Fund's letters dated January 24, 2007 and February 14, 2007.[2] However, the calculation sheet attached to those documents shows that the "error" in the original calculation resulted from the Fund's use of the statutorily required three plan years of contribution base units, and that the new monthly amount was determined using only two plan years of contribution base units. The Fund contends that since DISA was only a part of the plan for two years, the Fund's recalculation using only two plan years is proper. The Fund is mistaken in ignoring the plain, clear language of the statute, however. *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 254 (2000) *(*"In ERISA cases 'as in any case of statutory

---

[2] This Court may consider documents referenced in the Fund's complaint without converting the motion to dismiss into one for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts considering motions to dismiss may consider "documents incorporated into the complaint by reference"); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

7

construction, our analysis begins with the language of the statute . . . . And where the statutory language provides a clear answer, it ends there as well.'")

The relevant calculation provision of the statute provides that:

> [T]he amount of each annual payment shall be the product of--
> (I) the average annual number of contribution base units for the period of *3 consecutive plan years*, during the period of 10 consecutive plan years ending before the plan year in which the withdrawal occurs, in which the number of contribution base units for which the employer had an obligation to contribute under the plan is the highest . . .

29 U.S.C. § 1399(c)(1)(C)(i) (emphasis added). The ERISA statute is intended to only *roughly*, rather than precisely, match the employer's proportionate share of the unfunded vested benefits. *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferber Corp.*, 522 U.S. 192, 196-97 (1997). The Fund argues that the policy underlying the MPPAA supports its position in wholly disregarding the plain language of the statute in favor of applying a two-year calculation period, citing *Korea Shipping Corp. v. N.Y. Shipping Ass'n-Int'l Longshoremen's Ass'n Pension Trust Fund*, 880 F.2d 1531, 1537 (2d. Cir. 1989), which held that limiting the meaning of the word "employer" to its narrow common law definition would defeat the MPPAA's goal of providing broad coverage. Here, to claim that "3" when used in the statute means something other than "three" would entirely disregard the plain language of the statute without giving life to any underlying policy goals. The ERISA statute is intended to only *roughly* match the employer's proportionate share of the unfunded vested benefits—thus, there is no requirement that the time period used to calculate an employer's withdrawal liability be the same as the time period for that employer's participation in the plan. *See Bay Area Laundry*, 522 U.S. at 196-97 (1997).

Instead of addressing why its revised two-year calculation is correct even though it contradicts the clear statutory language, the Fund points to a series of cases where a pension fund

8

increased its calculated liability payments after the employer requested a review of the withdrawal liability amount.[3] However, in none of those cases did those funds go against the prescribed statutory calculation method. *Central States, Se. & Sw. Areas Pension Fund v. Boise Cascade Corp.*, No. 93-C-6603, 1994 WL 585713 (N.D. Ill. October 6, 1994) (Williams, J.), dealt with increased withdrawal liability following the employer's notification that the fund had relied on the wrong year of withdrawal. In *Masters, Mates & Pilots Pension Plan v. Pension Benefit Guaranty Corp.*, 900 F.2d 727 (4th Cir. 1990), the increase in withdrawal liability resulted because of a change in the date as of which the fund's assets were valued. In *Bd. of Trs. of the W. Conference of Teamsters Pension Trust Fund v. H.F. Johnson & Midland Terminal, Inc.*, 606 F. Supp. 231 (W.D. Wash. 1985), the fund demanded increased withdrawal payments after an internal audit, but did not respond to the employer's requests for additional information. All three cases found that the amendments to the withdrawal liability amounts were permissible, but none involved a revised calculation that changed a correct determination under the statute to an incorrect calculation. Thus, the Fund has provided no authority for its argument that the plain statutory language requiring withdrawal liability to be calculated with reference to a three-year period may be ignored in favor of a two-year calculation, even where the employer has participated in the plan at issue for only two years.

Therefore, even assuming all the facts contained within the Fund's well-pleaded complaint are true, it cannot state a claim upon which its requested relief, the payment of the higher withdrawal

---

[3] As the District of Columbia court noted, the Fund has not provided any statutory or judicial authority supporting the proposition that it is entitled to demand increased withdrawal liability payments when the employer has not requested a review of the payment amount and where the "employer has begun paying in accordance with the amount requested in the additional demand." *Shopmen I* at 101. The Court need not decide whether the Fund is allowed to spontaneously demand increased payments as a general matter, however, because it is clear that it may not demand increased payments using a formula that is at odds with the clear language of the statute.

liability on the basis of a two-year contribution period, may be granted. Therefore, the Fund's claim is dismissed with prejudice.

## CONCLUSION AND ORDER

DISA has not shown that *res judicata* is applicable to the present claim. However, the Fund has not, and indeed cannot, allege facts sufficient to show that it is entitled to the relief sought, because the alleged error in calculation is inapposite to the statutorily prescribed requirement of using three consecutive plan years. Thus, even assuming all of the Fund's alleged facts are true, the Fund has failed to state a claim to accelerate DISA's payments pursuant to 29 U.S.C. § 1399(c)(5).

DISA's Motion to Dismiss is granted.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 24, 2010